UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
FEDIE R. REDD,

                                        Plaintiff,

        -against-                                   **REPORT AND**
                                                    **RECOMMENDATION**
ZINA LEFTENANT, JASON ZIMMER,                       16-CV-4919 (JFB)(SIL)
RICHARD SAMUEL. RAYMOND HORTON,
MEGAN RUDY, PATRICIA P. WRIGHT, and
"et al."

                                        Defendants.
----------------------------------------------------------------x

**LOCKE, Magistrate Judge:**

    Presently before the Court in this 42 U.S.C. § 1983 civil rights litigation, on referral from Honorable Joseph F. Bianco for Report and Recommendation, are Defendants' Detective Zina Leftenant ("Leftenant"), Police Officer Jason Zimmer ("Zimmer"), Police Officer Richard Samuel ("Samuel"), and Deputy Chief of Police Raymond Horton ("Horton") (collectively "Freeport Defendants"), and Assistant District Attorney Megan Rudy ("ADA Rudy") and Assistant District Attorney Patricia P. Wright ("ADA Wright") (collectively "County Defendants") respective motions to dismiss *pro se* Plaintiff Fedie R. Redd's ("Redd" or "Plaintiff") Complaint ("Compl."). *See* motion to dismiss ("Freeport Motion"), Docket Entry ("DE") [18]; motion to dismiss ("County Motion"), DE [21]; *see also* Compl., DE [1]. The Freeport Defendants also move for a more definite statement of the claims against them pursuant to Fed. R. Civ. P. 12(e). On April 6, 2017, Judge Bianco referred these motions to this Court for a Report and Recommendation as to whether they should be granted.

1

*See* DE [29].  For the reasons set forth herein, the Court respectfully recommends that the both motions be granted in their entirety and that the Complaint be dismissed with prejudice

## I.   STATEMENT OF RELEVANT FACTS

The following facts, set forth in the Complaint and the attached exhibits, are presumed true for purposes of Defendants' motions.[1]

Plaintiff alleges that, on February 5, 2010, she was falsely arrested by the Freeport Defendants, and maliciously prosecuted by the County Defendants, for filing a false police report against Calvin E. Taylor ("Taylor).  *See* Compl. at 15-16.  Prior to her arrest, beginning in August 2009, Redd alleges that Taylor was repeatedly stalking her in various locations.  *See id.* at 15.  On January 21, 2010, Redd filed a report with the Freeport Police Department, alleging that Calvin Taylor followed her from her job in Farmingdale, New York, to her home in Freeport, New York.  *See id.* at 16.  On February 5, 2010, the Freeport Police Department arrested Redd and charged her with filing a false police report in connection with her January 21, 2010 report.  *See id.* at 15.

Because of the charges against Redd, she was terminated by her employer, the New York State Division of Parole, and subsequently contested her termination through binding arbitration.  A full hearing was held where evidence and testimony were presented before Arbitrator Edward A. Battisti.  *See* Opinion and Award of

---

[1] The Complaint contains both numbered and unnumbered paragraphs.  Where available, the Court will use paragraph numbers in its citations; otherwise, the Court will cite to the relevant page number.

Edward A. Battisti ("Arbitration Award"), DE [18-6].  At the conclusion of the hearing, Arbitrator Battisti found that the Division of Parole had just cause to terminate Redd based on a finding that the Freeport Police Department had probable cause to arrest her for her January 21, 2010 report.  *See id.* at 25.

Thereafter, Plaintiff commenced an Article 75 proceeding in New York County Supreme Court, seeking to vacate the arbitration award.  In an Order and Decision dated February 2, 2011, the Supreme Court concluded that the arbitrator's award had ample evidentiary support.  *See* Decision of the New York County Supreme Court ("New York County Decision"), DE [18-8].  Plaintiff subsequently appealed this decision, and the Appellate Division, First Department affirmed.  *See* Decision of the Appellate, Division, First Department ("First Dep't Decision"), DE [18-9].

Plaintiff also contested a decision of the Unemployment Insurance Appeal Board, which disqualified her from receiving unemployment insurance benefits because her employment was terminated due to the above-mentioned alleged misconduct.   Redd appealed that ruling to the Appellate Division, Third Department, which, on June 6, 2012, affirmed the Unemployment Insurance Appeal Board's decision.  *See* Decision of the Appellate Division, Third Department ("Third Dep't Decision"), DE [18-10].

Redd also sued in Nassau County Supreme Court for damages arising out of her arrest on February 5, 2010, alleging false arrest, false imprisonment, intentional   infliction   of   emotional   distress,   defamation,   fraud,   malicious

prosecution, abuse of power, and prima facie tort. *See* Redd's Nassau County Supreme Court Summons and Complaint dated May 3, 2011 ("Nassau County Decision"), DE [18-11]. In a decision dated June 23, 2015, the Nassau County Supreme Court found that Redd's claims were barred under the doctrine of collateral estoppel. Specifically, the Supreme Court determined that:

> [t]he March 25, 2010 arbitration determination of Edward A. Battisti; the Order of the Hon. Carol E. Huff dated February 2, 2011 confirming said arbitrator's determination and the April 26, 2012 Decision and Order of the Appellate Division, First Department affirming Justice Huff's Order and the determination and Order of the Appellate Division, Third Department dated June 6, 2012 affirming the determination of the Unemployment Insurance Appeal Board individually and collectively constitute determinations that the February 2, 2010 arrest was proper.

Decision of the Nassau Supreme Court, DE [18-12], at 1-2. Accordingly, the Nassau County Supreme Court dismissed her case.

Redd now alleges, *inter alia*, that the Freeport and County Defendants conspired to falsely arrest and maliciously prosecute her for filing her January 21, 2010 police report. *See generally* Compl. As to Leftenant, Plaintiff alleges that she "did knowingly falsify evidence with malice . . . [and] [s]he falsified the police complaint report dated February 4, 2010, and submitted it to the District Attorney's office, Nassau County Property Bureau and to the Court with malice." *See id.* at 15. Plaintiff alleges that Zimmer "knowingly provided falsified evidence with malice" in the police complaint report and supporting deposition. *Id.* at 16. The Complaint further states that Leftenant, Zimmer, and Samuel "did knowingly

4

conspire to provide a false, and fictitious alibi for one Calvin E. Taylor on his whereabouts on January 21, 2010." *Id.* at ¶ 8, at 8. 10.  Finally, Redd alleges that Horton had knowledge of the actions of the other Freeport Defendants and failed to intervene.  *See id.*

As to the County Defendants, Redd alleges that "Megan Rudy Nassau County Assistant District Attorney who prosecuted the Plaintiff was in violation of the *Brady* disclosure Rule and conspired with Zina Leftenant to prosecute a case where there was no probable cause, no merit, and no proof whatsoever that plaintiff who was a peace officer at the time gave false information to police officer Jason Zimmer." *Id.* ¶ 37.  In addition, Plaintiff alleges that Assistant District Attorney "Patricia Wright has failed to intervene on behalf of plaintiff who has continuously reported stalking incidents by Calvin Taylor to her at the Nassau County Criminal Complaint Bureau and submitted proof by way of witnesses, evidence, and pictures. *Id.* ¶ 39.

## II.  PROCEDURAL HISTORY

Redd filed her Complaint on September 2, 2016.  *See* DE [1].  The Complaint seeks money damages for:  (1) False Arrest; (2) Malicious Prosecution; (3) Defamation of Character; (4) Abuse of Process; (5) Failure to Train (6) Failure to Intervene, and (7) to compel the NYS Division of Criminal Justice to expunge her criminal history from her RAP sheet.  *See generally* Compl.  In response, on October 14, 2016 and October 31, 2016, the Freeport and County Defendants, respectively, moved pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") to dismiss on a variety of grounds,

and, on April 6, 2017, Judge Bianco referred the motions to this Court for Report and Recommendation.  *See* DE [29].

## III.   LEGAL STANDARD

### A. <u>Fed. R. Civ. P. 12(b)(1)</u>

Pursuant to Article III, Section 2 of the United States Constitution, "the jurisdiction of the federal courts is limited to 'Cases' and 'Controversies,' which 'restricts the authority of the federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Amityville Mobile Home Civic Ass'n v. Town of Babylon*, No. 14-CV-2369, 2015 WL 1412655, at *2 (E.D.N.Y. Mar. 26, 2015) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 133 S. Ct. 1523, 1528 (2013)).  In the absence of a case or controversy, Fed. R. Civ. P. 12(b)(1) "provides that a party may move to dismiss a case for lack of subject matter jurisdiction." *Amityville Mobile Home*, 2015 WL 1412655, at *3.  The Second Circuit has held that, "[t]he hallmark of a case or controversy is the presence of adverse interests between parties who have a substantial personal stake in the outcome of the litigation." *Evans v. Lynn*, 537 F.2d 571, 591 (2d Cir. 1975); *see also Ayazi v. N. Y. C. Bd. of Educ.*, No. 98-CV-7461, 2006 WL 1995134, at *2 (E.D.N.Y. July 14, 2006), *vacated on other grounds*, 315 Fed.App'x. 313 (2d Cir. 2009) ("Without standing, this court does not have jurisdiction to hear the claim.").  Therefore, to survive a defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "a plaintiff must allege facts 'that affirmatively and plausibly suggest that it has standing to sue.'" *Brady v. Basic*

6

*Research*, L.L.C., 101 F. Supp. 3d 217, 227 (E.D.N.Y. 2015) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

In deciding a motion to dismiss for lack of subject matter jurisdiction, "a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001). However, "[w]here subject matter jurisdiction is challenged, . . . a court may consider materials outside the pleadings, such as affidavits, documents and testimony." *Id.*; *see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56.").

## B. <u>Fed. R. Civ. P. 12(b)(2)</u>

"A plaintiff bears the burden of demonstrating personal jurisdiction over the person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted). Federal Rule of Civil Procedure 12(b)(2) "permits a defendant to challenge a court's personal jurisdiction over it prior to the filing of an answer or the commencement of discovery." *A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*, 828 F.Supp.2d 557, 562 (E.D.N.Y .2011). In considering a motion to dismiss for lack of personal jurisdiction, a court may rely on materials beyond the pleadings. *Phillips v. Reed Group, Ltd.*, 955 F.Supp.2d 201, 225 (S.D.N.Y .2013) (when considering a 12(b)(2) motion, "the Court may also rely on submitted affidavits and other supporting materials submitted in

relation to the motion").  "When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). Where a court opts to determine the jurisdictional issue without an evidentiary hearing or discovery, a plaintiff need "make only a prima facie showing of jurisdiction through its own affidavits and supporting materials."  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).  When, however, a court permits the parties to engage in jurisdictional discovery, the party seeking to establish jurisdiction bears "the burden of proving by a preponderance of the evidence that personal jurisdiction exists."  *Landoil Resources Corp. v. Alexander & Alexander Servs.*, Inc., 918 F.2d 1039, 1043 (2d Cir. 1991).  Under either scenario, the "pleadings and affidavits are construed in the light most favorable to the plaintiff, and all doubts are resolved in its favor."  *Mazloum v. International Commerce Corp.*, 829 F.Supp.2d 223, 227 (S.D.N.Y. 2011).

### C. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  But, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of

a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). Where the complaint is filed by a *pro se* litigant, the Court must also be careful to "interpret the complaint liberally to raise the strongest claims that the allegations suggest." *Rosen v. N. Shore Tower Apartments, Inc.*, 11-CV-00752, 2011 WL 2550733, at *2 (E.D.N.Y. June 27, 2011) (citing *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)). Notwithstanding, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court may consider:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted); *see also Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 425 (S.D.N.Y.

9

2008) ("[I]n assessing the legal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference."). The Court is also permitted to "take judicial notice of documents in the public record, which includes records and reports of administrative bodies." *Vale v. Great Neck Water Pollution Control Dist.*, 80 F.Supp.3d 426, 433 (E.D.N.Y. 2015) (quoting *Volpe v. Nassau County*, 915 F.Supp.2d 284, 291 (E.D.N.Y. 2013)). Courts in this district have held that "a court considering a motion pursuant to Rule 12(b)(6) may take judicial notice of arrest reports, certificates of disposition, criminal complaints, DD5s, and indictments." *McLennon v. New York City*, No. 13-CV-128, 2015 WL 1475819, at *4 (E.D.N.Y. Mar. 31, 2015).

### D. <u>Fed. R. Civ. P. 12(e)</u>

Rule 12(e) of the Federal Rules of Civil Procedure provides, in relevant part, that a party may move for a more definite statement for pleadings which are "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The Rule also provides that such "motion must be made before the filing of the responsive pleading and must point out the defects complained of and the details desired." *Id.* "The Rule is designed to remedy unintelligible pleadings, not to correct for lack of detail." *Maxwell v. N.Y. Univ.*, No. 08 Civ 3583, 2008 WL 5435327, at *2 (S.D.N.Y. Dec. 31, 2008) (internal citations and quotation marks omitted). Moreover, Rule 12(e) motions are generally disfavored because of their dilatory effect. *See*, *e.g.*, *Joya v. Verizon N.Y., Inc.*, No. 08 Civ. 5328, 2008 WL 4667987, at *1–2 (S.D.N.Y. Oct. 20, 2008) (collecting cases). Accordingly, motions

pursuant to Fed. R. Civ. P. 12(e) "should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-3551, 2012 WL 1890242, at *4 (E.D.N.Y. May 23, 2012).

## IV.   DISCUSSION

Applying the standards outlined above, and for the reasons set forth herein, the Court respectfully recommends that Defendants' motions to dismiss the Complaint be granted in their entirety.  The Court considers the County and Freeport Defendants' motions in turn.

### A.  <u>Claims Against the County Defendants</u>

#### i.  *Eleventh Amendment Immunity and the County Defendants*

Initially, the Court turns to the County Defendants' argument that Plaintiff's claims, to the extent they are brought against them in their official capacity representing New York State, are barred by the Eleventh Amendment.  As a result, the Court lacks subject matter jurisdiction over these claims and they should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  The Eleventh Amendment bars suits in federal court by private parties against a state absent consent to suit or an express statutory waiver of the state's otherwise presumed sovereign immunity.  *Board of Trustees of University of Alabama v. Garrett,* 531 U.S. 356, 362, 121 S. Ct. 955, 962 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.").  This same immunity from suit is extended to a state's agencies and departments understanding them to be arms of the state.  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*

11

506 U.S. 139, 146, 113 S. Ct. 684, 688 (1993); *see also Wang v. Office of Professional Medical Conduct, New York,* 354 Fed. Appx. 459, 461 (2d Cir. 2009) (holding that the plaintiff may only seek prospective relief from the state by naming a state official, rather than the State or state agency directly).   Thus, a claim that is barred by a state's sovereign immunity is properly dismissed pursuant to the Eleventh Amendment for a lack of subject matter jurisdiction.   *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 1121 (1996) ("For over a century [the Supreme Court has] reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'"); *see also Bryant v. Steele,* 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citing *Va. Office for Prot. & Advocacy v. Stewart,* 563 U.S. 247, 252, 131 S. Ct. 1632, 1637 (2011) (noting that "the Eleventh Amendment ... confirm[s] the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article Ill's jurisdictional grant")).[2]   As explained in other decisions of this Court, the Eleventh Amendment serves to prevent

---

[2] The Court is mindful that the question of "whether the claim of sovereign immunity [under the Eleventh Amendment] constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense" has not been definitively answered by the Supreme Court or the Second Circuit.  *Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) (citing *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391, 118 S. Ct. 2047, 2053 (1998) (leaving open the question of whether "Eleventh Amendment immunity is a matter of subject-matter jurisdiction"); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237-39 (2d Cir. 2006) (holding that the burden of proof regarding sovereign immunity rests on the party asserting it as is true of affirmative defenses generally).  However, the Supreme Court repeatedly and recently has discussed the Eleventh Amendment as a jurisdictional bar and has confirmed that a state's sovereign immunity conferred by it can be raised for the first time on appeal.  *See Woods*, 466 F.3d at 237-38 (collecting cases).  Both holdings are consistent with the issue being essentially jurisdictional.  *See id.*  As the exact characterization of Eleventh Amendment immunity does not substantively impact this Court's Report and Recommendation that the Complaint be dismissed, the Court assumes it to be jurisdictional and does not analyze the issue further.

state governments from being sued in federal court under § 1983.   *See Willner v. Town of North Hempstead*, 977 F. Supp. 182, 193 (E.D.N.Y. Sept. 11, 1997).  "When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *See id.* (quoting *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1988)).

Here, Plaintiff's Section 1983 claims seek exclusively money damages against the County Defendants, both of whom are alleged to be state actors sued in their official capacities.   Accordingly, Plaintiff's claims are barred by the Eleventh Amendment and the County Defendants' motion to dismiss should be granted. *See, e.g.*, *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (affirming dismissal of claims against current and former Kings County District Attorneys and Assistant District Attorneys on Eleventh Amendment grounds); *see also Casaburro v. Giuliani*, 986 F.Supp. 176, 182 (S.D.N.Y. 1997) (granting state court clerk's motion to dismiss official capacity suit on Eleventh Amendment grounds); *Davis v. State of N.Y.*, No. 90–CV–6170, 1991 WL 156351, at *2 (S.D.N.Y. Aug. 6, 1991) (dismissing claim against state-court officials on Eleventh Amendment grounds), *aff'd*, 106 F. App'x 82 (2d Cir. 2004).

## ii.  *Absolute Prosecutorial Immunity and the County Defendants*

The County Defendants argue in the alternative that, to the extent that Redd's claims against them are based on their conduct allegedly committed in their individual capacities, those claims are barred by the doctrine of absolute prosecutorial immunity.  It is well settled that a prosecutor enjoys absolute immunity for the "initiation and pursuit of a criminal prosecution" and for any acts taken in

"presenting the State's case at trial." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S. Ct. 2606, 2613 (1993); *see Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S. Ct. 984, 995 (1976).   In other words, a state prosecutor enjoys absolute immunity when engaged in activities "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430, 96 S. Ct. at 995; *see also Day v. Morgenthau*, 909 F.2d 75, 77 (2d Cir. 1990).  The purpose of the immunity doctrine is to "preserve the integrity of the judicial process" and enable "zealous[] perform[ance of] prosecutorial duties" without the "constant threat of legal reprisals." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1147 (2d Cir. 1995) (quoting *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995)) (internal quotations omitted).   And, insofar as Plaintiff is seeking relief under state law, "[p]rosecutorial immunity is, if anything, even broader under New York state law than it is under federal law." *Coakley v. Jaffee*, 49 F. Supp.2d 615, 627 (S.D.N.Y. 1999), *aff'd*, 234 F.3d 1261 (2d Cir. 2000); *see also Rodrigues v. City of New York*, 193 A.D.2d 79, 87, N.Y.S.2d 337  (1st Dept. 1993) ("a prosecutor, as a quasi-judicial officer, is, with respect to State law claims, immune from civil suit for official acts performed in the investigation and prosecution of criminal charges"); *Santangelo v. State*, 101 A.D.2d 20, 23, 474 N.Y.S.2d 995, 997 (4th Dept. 1984) ("absolute immunity has been extended to . . . a District Attorney in his official actions in investigating and prosecuting crime").

     In determining whether prosecutorial immunity is available, courts employ a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269, 113 S. Ct. at 2613;

*see also Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001) ("The actions of a prosecutor are not covered by absolute immunity merely because they were performed by a prosecutor; rather, the question is whether the actions are part of a prosecutor's traditional functions.") (internal quotation marks omitted). *See Warney v. Monroe County*, 587 F.3d 113, 121 (2d Cir. 2009)(finding that prosecutors engaged in their overarching advocacy function of dealing with post-trial initiatives challenging an underlying criminal conviction are absolutely immune in the post-conviction context); *see also Parkinson v. Cozzolino*, 238 F.3d 145, 152 (2d Cir. 2001)(absolute immunity shields prosecutors from liability for the retention of evidence after conviction while a direct appeal is pending). Whether a prosecutor "may be sheltered by absolute immunity from liability for [his conduct] turns on whether or not [his conduct] occurred in the course of his role as an advocate." *Hill*, 45 F.3d at 662.

Applying the standards above, to the extent Redd's claims are brought against the County Defendants in their individual capacities, they are barred by prosecutorial immunity. Here, Plaintiff claims that the County Defendants conspired, failed to turn over *Brady* materials, and maliciously prosecuted her in her underlying criminal proceeding. It is well settled that prosecutors are immune from malicious prosecution actions and are entitled to absolute immunity when, during a prosecution, they present false evidence to the Court or exert influence over a defendant's guilty plea. *See Peay v. Ajello*, 470 F.3d 65, 67–68 (2d Cir. 2006) ("Plaintiff's claims against [his prosecutor], which encompass activities involving the initiation and pursuit of

prosecution [including fabricating evidence used at trial, withholding exculpatory evidence, suborning perjury, and attempting to intimidate him into accepting a guilty plea], are foreclosed by absolute prosecutorial immunity, regardless of their alleged illegality."). "A prosecutor is also absolutely immune from charges alleging the withholding of exculpatory evidence from a grand jury and suppressing *Brady* material. An allegation of conspiracy to perform the foregoing acts does not change the conclusion that the acts are entitled to absolute immunity." *Storck v. Suffolk County Dep't of Social Servs.*, 62 F.Supp.2d 927, 943 (E.D.N.Y. 1999) (citations omitted). "[A]bsolute immunity even protects a prosecutor against claims for allegedly conspiring to present false evidence at a criminal trial. *See Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994). For instance, in *Tellier v. Petrillo*, plaintiff alleged that the Assistant United States Attorneys had "formed a conspiracy to fabricate a new charge, not contained in the original indictment" and had "conspired to present the fabricated evidence to a grand jury in order to obtain a superceding indictment." 133 F.3d 907 (2d Cir. 1997). The Second Circuit affirmed the dismissal of the complaint, noting that the presentation of a superceding indictment was protected by absolute immunity. *Id.* Therefore, as Redd's allegations are based on acts intimately associated with the judicial phase of the criminal proceeding, they are barred by the doctrine of absolute prosecutorial immunity. Accordingly, the Court recommends that the County Defendants' motion to dismiss be granted and that Redd's claims against them be dismissed in their entirety.

### B. **Claims against the Freeport Defendants**

The Freeport Defendants move to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(6). Initially, they argue for dismissal against Defendant Leftenant due to a lack of personal jurisdiction. In addition, the Freeport Defendants argue that Redd has failed to state a claim for which relief can be granted. They makes three arguments to this end. Specifically, the Freeport Defendants argue that Plaintiff's: 1) claims are collaterally estopped; 2) 42 U.S.C. § 1983 claims are untimely and/or do not allege facts sufficient to plausibly put forth a valid cause of action; and 3) 42 U.S.C. § 1985(3) conspiracy claims are untimely and/or do not allege facts sufficient to state a claim.

### i. *Personal Jurisdiction over Defendant Leftenant*

First, the Freeport Defendants argue that the Court lacks personal jurisdiction under Fed. R. Civ. P. 12(b)(2) over Defendant Leftenant due to inadequate service. "Valid service of process is an essential element of personal jurisdiction." *Daval Steel Prod. v. M.V. Juraj Dalmatinac*, 718 F.Supp. 159, 161 (S.D.N.Y. 1989). Turning to the applicable rules for service of process, Federal Rule of Civil Procedure 4(e) governs the manner in which individuals within a judicial district of the United States may be served. *See* Fed. R. Civ. P. 4(e). According to this rule, service may be completed by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint to the individual personally;

> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> >
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

As the first subsection of Rule 4(e) incorporates state law, the Court may, in this case, looks to applicable statute, section 308 of the New York Civil Practice Law and Rules ("C.P.L.R."). *See* N.Y. C.P.L.R. § 308. Pursuant to section 308, service upon an individual may be effectuated by:

> 1. [] delivering the summons within the state to the person to be served; or
>
> 2. [] delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or . . . at his or her actual place of business . . .; [or]
>
> 3. [] delivering the summons within the state to the agent for service of the person to be served . . . ; [or]
>
> 4. where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or . . . at his or her actual place of business . . .; [or]
>
> 5. in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.

N.Y. C.P.L.R. § 308; *see Allen v. Nassau Cty. Exec. Office*, No. CV 09-1520, 2011 WL 1061019, at *5 (E.D.N.Y. Feb. 15, 2011), (Report and Recommendation), *adopted sub nom. Allen v. Suozzi*, 2011 WL 1059147 (E.D.N.Y. Mar. 21, 2011) (reciting same standard).  The method of service attempted by plaintiff on Leftenant most resembles that permitted under § 308(2).

The court finds that Redd has not complied with the requirements of § 308(2). Leftenant argues that she has not been properly served with a copy or an original of Plaintiff's Summons and  Complaint. As indicated within the Plaintiff's Complaint, service upon Leftenant was made at 46 North Ocean Avenue, Freeport New York 11520, the physical address of the Incorporated Village of Freeport's Village Clerk.  *See* Compl. at 2.  Leftenant states that she is currently a resident and domiciliary of the State of Georgia, has resided in Georgia since August 1, 2013, and that she has no current contacts with the State of  New York.  *See* Declaration of Zina Leftenant ("Leftenant Declaration), DE [18-18], ¶¶ 6-8.  She has not been employed by the Village of Freeport since 2013, and is not under the supervision, direction, or control of the Village of Freeport.  *See id.*  As a result, Redd has failed to properly serve Leftenant at her actual place of business, dwelling place, or usual place of abode.  Accordingly, this Court lacks personal jurisdiction over her and recommends that Redd's claims against Leftenant be dismissed.

### ii.  Collateral Estoppel

Next, the Freeport Defendants argue that Plaintiff's claims are barred by the doctrine of collateral estoppel.  The doctrine of collateral estoppel prevents a party from re-litigating an issue of fact or law that has been decided in an earlier suit.  *See*

*Wilder v. Thomas*, 854 F.2d 605, 616 (2d Cir. 1988), *cert. denied*, 489 U.S. 1053, 109 S.Ct. 1314 (1989).  Federal courts are required by 28 U.S.C. § 1738 to give effect to collateral estoppel rules of the state that rendered a prior judgment where the same issues are later raised in a federal proceeding.  *Id.* (citing *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896 (1984)).  Under New York law, there are two requirements for collateral estoppel: (1) an identity of issues that were necessarily decided in the previous action and are decisive in the present action; and (2) a full and fair opportunity to contest the decision now said to be controlling.  *See Schwartz v. Pub. Adm'r of Bronx*, 24 N.Y.2d 65, 73, 298 N.Y.S.2d 955, 961 (1969).

This Court must also give preclusive effect to both the quasi-judicial determinations of administrative agencies, as well as the judicial review of an administrative determination.  *See Wilder*, 854 F.2d at 616–17; *see also Kremer v. Chemical Contr. Corp.*, 456 U.S. 461, 480–81 n.21, 102 S.Ct. 1883, 1911 n.21 ("It is well established that judicial affirmance of an administrative decision is entitled to preclusive effect.") (citations omitted); *Zanghi v. Inc. Village of Old Brookville*, 752 F.2d 42, 46 (2d Cir. 1985) (collateral estoppel applies "to the quasi-judicial determinations of administrative agencies when rendered pursuant to adjudicatory authority.")(internal quotation marks and citations omitted).  New York courts adhere to a broad transactional analysis "barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief."  *Niles v. Wilshire Inv. Grp.*, LLC, 859 F. Supp. 2d 308, 338 (E.D.N.Y. 2012) (internal citations omitted).

"Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. U.S.*, 440 U.S. 147, 153, 99 S. Ct. 970, 973, (1979). "What matters for collateral estoppel purposes is that the issues are identical, not the claims themselves." *Cerny v. Rayburn*, 972 F.Supp.2d 308, 317 (E.D.N.Y. 2013) (internal citations omitted).

In determining whether a party had a full and fair opportunity to litigate the issue, New York courts direct that "the various elements which make up the realities of litigation should be explored, including the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 734 (2d Cir. 2001) (quoting *Schwartz*, 24 N.Y.2d at 72, 298 N.Y.S.2d at 961) (internal punctuation omitted). Additionally, in analyzing the preclusive effect of administrative proceedings, it should also be determined "whether the procedures used in the administrative proceeding assured that the information presented to the agency were sufficient both quantitatively and qualitatively, so as to permit confidence that the facts asserted were adequately tested, and that the issue was fully aired." *See id.* (quoting *Allied Chem., an Operating Unit of Allied Corp. v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 277, 532 N.Y.S.2d 230, 232 (1988)).

Here, Redd raises issues stemming from her alleged false arrest were that were previously decided in the prior state court actions and are decisive in the present litigation.  After her arrest, Redd was terminated by her employer, the New York State Division of Parole, and she subsequently contested her termination through binding arbitration.  The arbitrator concluded that the New York State Division of Parole had probable cause to believe that Redd was guilty of falsely accusing Taylor of stalking and filing a false written statement in violation of Penal Law § 210.45. *See* Arbitration Award at 25.  Redd subsequently commenced an Article 75 proceeding in New York County Supreme Court seeking to vacate the arbitrator's decision, whereby, the Supreme Court affirmed the award.  *See generally* New York County Decision.  Plaintiff then appealed the action to the Appellate Division, First Department, which affirmed the lower court decision, and further stated that "the record amply supports the arbitrator's finding that the petitioner had violated the DOP's Code of Conduct by making false accusations of stalking, which resulted in her arrest."  *See* First Dep't Decision at 1-2.  Further, Redd sued in Nassau County Supreme Court for damages arising out of her arrest on February 5, 2010, alleging false arrest, false imprisonment, intentional infliction of emotional distress, defamation, fraud, malicious prosecution, abuse of power, and prima facie tort.  In a decision dated June 23, 2015, the Nassau County Supreme Court found that Redd's claims were barred by the doctrine of collateral estoppel.  *See* Nassau County Decision at 1-2.  The Supreme Court determined that Redd's respective causes of action emanated from her February 5, 2010 arrest, and as a result, dismissed her case.

*See id.* at 2.  In addition to the above-mentioned actions, after Redd was terminated, she was denied unemployment insurance benefits and contested, and ultimately lost, that determination before the Unemployment Insurance Appeal Board.  Plaintiff appealed that decision to the Appellate Division Third Department, which affirmed the Board's ruling.  *See* Third Dep't Decision.  In rejecting Redd's appeal, the Third Department held that a "collateral estoppel effect must be given to the arbitrator's factual findings regarding claimant's misconduct."

There can be no real dispute here that the issues that comprise the basis for Plaintiff's current litigation are identical to those previously raised in her state court proceedings.  As described above, Plaintiff's previous actions assert claims premised upon the issue of whether the County Defendants had probable cause to effectuate her arrest.  This is precisely the underlying issue Plaintiff seeks to litigate here.  Thus, the Court would be unable to grant Plaintiff relief on any of her asserted causes of action, which emanate from her alleged false arrest, without making findings directly contrary to those made in her previous state court proceedings.  *See LaFleur v. Whitman*, 300 F.3d 256, 273 (2d Cir.2002) (concluding that issues raised by petitioner in federal action were identical to issues raised in the state court action because the court could not grant the requested relief "without directly contradicting the state court on issues it has previously decided.")  Accordingly, the court concludes that the Freeport Defendants have established an identity of issues for purposes of collateral estoppel.

Plaintiff also had a full and fair opportunity to contest the previous decisions regarding her alleged false arrest. In looking at Redd's New York State Parole arbitration hearing, it demonstrates that she was represented by counsel, that counsel submitted supporting documentation and witnesses were able to provide testimony. Additionally, photos and videotapes obtained by the Freeport Defendants, as well as the original arrest paperwork, were also submitted into the record. As such, the procedures of the administrative hearing were quantitatively and qualitatively sufficient as to provide "confidence that the facts asserted were adequately tested, and that the issue was fully aired." Accordingly, Redd has received a full and fair opportunity to contest the previous decision. As a result, Plaintiff is collaterally estopped from re-litigating issues stemming from her alleged false arrest in the instant action and the Freeport Defendants' motion to dismiss should be granted and her claims against them be dismissed in their entirety under the doctrine of collateral estoppel.[3]

---

[3] Redd argues that, in respect to her prior proceedings, it was "her right to navigate through those appeal processes," and appears to argue that the Nassau County Supreme Court erred in its decision. To the extent that Redd argues for review over the decision of the Nassau County Supreme Court, the Court lacks subject matter jurisdiction over Redd's claims pursuant to Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). Pursuant to the *Rooker-Feldman* doctrine, federal courts lack authority to review state court judgments. *See Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923); *see also* 28 U.S.C. § 1257 (vesting appellate subject matter jurisdiction over state courts judgments in the United States Supreme Court). "A challenge under the *Rooker-Feldman* doctrine is for lack of subject matter jurisdiction." *Remy v. N.Y. State Dep't of Taxation & Finance*, 507 F. App'x 16, 18 (2d Cir. 2013). "*Rooker-Feldman* directs federal courts to abstain from considering claims when four [4] requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *Id.* To the extent that Redd seeks review of her prior state court actions, the *Rooker-Feldman* criteria are met, and the Court lacks subject matter jurisdiction to consider Redd's claims.

### iii.  Redd's 42 U.S.C. § 1983 Claims

Alternatively, Redd's section 1983 claims should be dismissed as they are untimely and, as a result, fail to state a cause of action under Fed. R. Civ. P. 12(b)(6). 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.   Although section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state[-]law." *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983).

Initially, the Freeport Defendants move to dismiss Plaintiff's claims on timeliness grounds.  While Section 1983 does not contain a statute of limitations provision, the Supreme Court has held that courts entertaining claims brought under 42 U.S.C § 1983 should borrow the state statute of limitations governing general personal injury actions.  *See Owens v. Okure*, 488 U.S. 235, 249, 109 S. Ct. 573, 582 (1989).  New York State has a three-year statute of limitations governing such claims. *See* CPLR § 214(5).  Accordingly, the Supreme Court has held that the statute of limitations for a claim brought under 42 U.S.C. § 1983 in New York State is three

25

years. *See Owens*, 488 U.S. at 249, 109 S. Ct. at 582; *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (finding N.Y. C.P.L.R. 214(5), which sets the statute of limitations for personal injury claims, supplies the limitations period for a civil rights claim brought under 42 U.S.C. § 1983 in New York). "Federal law determines when a section 1983 cause of action accrues, and we have ruled that accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002). Redd's 42 U.S.C. § 1983 claims against the Freeport and County Defendants arise out of her alleged false arrest that occurred on February 5, 2010. To the extent that Plaintiff knew or had reason to know of her injury, her three-year period began on February 5, 2010, and ended on February 5, 2013. Accordingly, because the Complaint was filed on September 2, 2016, over three years later, Plaintiff's 42 U.S.C. § 1983 claims are untimely and should also be dismissed.[4]

### iv. *Redd's 42 U.S.C. § 1985(3) Claim*

Separate from Plaintiff's section 1983 claims, the Freeport Defendants move to dismiss Redd's conspiracy claims pursuant to 42 U.S.C. § 1985(3) on timeliness grounds and for failure to state a cause of action. To state a claim for conspiracy under Section 1985(3), a plaintiff must allege:

> (1) a conspiracy, (2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy,

---

[4] The Court notes that, if the claims against the County Defendants are not dismissed on Eleventh Amendment and prosecutorial immunity grounds, they should also be deemed untimely, and therefore, dismissed on this alternate basis.

and (4) whereby a person is injured in his person or property or deprived of a right or privilege of a citizen.

*Turkmen v. Hasty*, 789 F.3d 218, 262 (2d Cir. 2015). To prevail on a claim under 42 U.S.C. § 1985(3), "the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)). The statute of limitations governing actions brought under 42 U.S.C. § 1985 is also three years. *See Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994). As with Section §1983 claims, a cause of action accrues under 42 U.S.C. § 1985 "once the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (internal quotation marks omitted). Therefore, as Redd's Section 1983 conspiracy claims are untimely, her Section 1985(3) conspiracy claims are also untimely.

Moreover, Plaintiff fails to allege that Defendants acted with any racial, class-based, or otherwise discriminatory animus. Accordingly, the Court recommends that Defendants' motion to dismiss Plaintiff's section 1985(3) conspiracy claim be granted on both timeliness grounds and for failure to state a cause of action.

## C. Claims for Expungement of Redd's Criminal Record

Further, Redd fails to state a claim for expungement of her state criminal record. First, jurisdiction over Plaintiff's state criminal record lies with the New York State Division of Criminal Justice Services ("DCJS"). S*ee Hall v. Marshall*, 479 F. Supp. 2d 304, 314 (E.D.N.Y. 2007) (noting that the DCJS is the appropriate entity for expungement of New York State criminal records). Moreover, has failed to name the

27

New York State Division of Criminal Justice in this action.  Instead, Plaintiff has named the County and Freeport Defendants, who do not have the ability to expunge Plaintiff's criminal record from her RAP sheet.  Accordingly, Redd has failed to state an expungement claim for which relief can be granted as against the Freeport or County Defendants.[5]

### D. **Supplemental Jurisdiction Over State-Law Claims**

Having recommended that each of Plaintiff's federal claims be dismissed, the Court further recommends that the Court decline to exercise supplemental jurisdiction over her remaining state law causes of action.  *See Quiroz v. U.S. Bank Nat'l Ass'n*, No. 10-CV-2485, 2011 WL 2471733, at *8 (E.D.N.Y. May 16, 2011) (recommending that the district court decline to exercise supplemental jurisdiction) (Report and Recommendation), *adopted by*, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011).  Supplemental jurisdiction over Plaintiff's state-law claims is governed by 28 U.S.C. § 1367, which provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . " 28 U.S.C. §

---

[5] The DJCS provides a state level administrative procedure to remedy any information that is wrong or incomplete on a criminal history record.  Specifically, New York law provides an administrative procedure by which anyone can "challenge the completeness or accuracy of [his or her] criminal history record information" by filing a "Statement of Challenge" with DCJS.  *See* 9 N.Y.C.C.R.R. § 6050.2. If the person is unsatisfied with DCJS's initial response, he or she may administratively appeal to the Commissioner of DCJS, *see id.*, and, if still unsatisfied, seek judicial review, *see* N.Y. C.P.L.R. Art. 78, Practice Commentary C7801:1 ("[A]rticle 78 proceedings are used to challenge action (or inaction) by agencies and officers of state and local government"); *Groves v. State Univ. of N.Y. at Albany*, 265 A.D.2d 141, 707 N.Y.S.2d 261 (3d Dep't 2000) (applying Article 78 to DCJS).

1367(a).  However, a district court may decline to exercise supplemental jurisdiction over a claim where, as here, all claims over which it had original jurisdiction have been dismissed.  28 U.S.C. § 1367(c).  When such circumstances arise prior to the commencement of trial, Second Circuit precedent consistently recognizes that, "the balance of factors to be considered," which includes "judicial economy, convenience, fairness and comity," "will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Valencia v. Lee,* 316 F.3d 299, 305 (2d Cir. 2003).

Defendants' filed their Rule 12 motions to dismiss the Complaint in lieu of an Answer.  *See* DE [18], [33].  Thus, this litigation is still in its initial stages and no discovery has taken place.  Accordingly, the Court respectfully recommends that the Defendants' motion to dismiss be granted and the District Court decline to exercise supplemental jurisdiction over Redd's state-law causes of action.  *See Quiroz*, 2011 WL 2471733, at *8 (recommending that the district court decline to exercise supplemental jurisdiction over state law claim once federal claims were dismissed).

### E.  Clarification of the Pleadings

In the event the District Court declines to adopt this Report and Recommendation, the Freeport Defendants' request for clarification of the pleadings should be denied.  *See* Freeport Motion at 20.  A motion for a more definite statement may be granted if "a pleading ... is so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading ..." Fed. R. Civ. P. 12(e).  As set forth above, a motion pursuant to Rule 12(e) should not be granted "unless the

complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Boothe v. TRW Credit Data*, 523 F.Supp. 631, 635 (S.D.N.Y. 1981).  The essence of a complaint is to inform the defendant as to the general nature of the action and as to the incident out of which a cause of action arose.  *Id.* (quoting *Roberts v. Acres*, 495 F.2d 57, 58 (7th Cir.1974)). Here, Redd's Complaint has informed the Defendants that the action is made pursuant to 42 U.S.C. § 1983, based on violations of her Fourth, Fifth, and Fourteenth Amendment rights, and the incident arises out of her alleged false arrest on February 5, 2010.  With respect to the Freeport Defendant's assertion, Redd's complaint is not so unintelligible as to preclude Defendants from drafting a responsive pleading. Accordingly, the Court recommends the request for clarification be denied.

### F. <u>Prohibition from Filing Additional Lawsuits</u>

Finally, the Freeport Defendants' request that the Court prohibit Redd from filing additional lawsuits should be denied.  "A district court may, in its discretion, impose sanctions against litigants who abuse the judicial process." *Shafii v. British Airways*, PLC, 83 F.3d 566, 571 (2d Cir. 1996). The Second Circuit has previously set forth several factors to be considered in restricting a litigant's future access to courts:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). Courts generally do not issue such an injunction without giving a plaintiff prior warning that such an injunction would be issued if he or she continued to file frivolous actions. *Valle v. YMCA of Greater N.Y.*, No. 06-CV-2083(NGG), 2007 WL 2126269, at *2 (E.D.N.Y. July 24, 2007). Here, Plaintiff has received no prior warning that she would be enjoined from filing additional lawsuits. Accordingly, in the absence of a warning, the Court recommends that Freeport Defendants' request be denied.

### G. Leave to File an Amended Complaint

While leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). However, the court must be mindful of the unique context of a *pro se* complaint and "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Aquino v. Prudential Life & Cas. Ins. Co.,* 419 F. Supp. 2d 259, 278 (E.D.N.Y. 2005); *see also Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them"). Nevertheless, "a district court may deny leave to amend when, as here, amendment would be futile because the problem with the claim 'is substantive ... [and] better pleading will not cure it.'"

31

*Reynolds v. City of Mount Vernon*, 14-CV-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Despite the leniency afforded Plaintiff considering her *pro se* status, the Court finds that the deficiencies in her pleadings are substantive and, due to the untenable and untimely nature of her claims, any subsequent amendments would be futile. Additionally, in her opposition Plaintiff has not requested permission to file an amended complaint, nor has she "given any indication that [s]he is in possession of facts that would cure the problems identified in this opinion." *Clark v. Kitt*, 12-CV-8061, 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014). Accordingly, as the facts present in the pleadings "give[] no indication that a valid claim may be stated," the Court respectfully recommends that Plaintiff not be granted leave to amend. *See Flaherty v. All Hampton Limousine, Inc.*, 02-CV-4801, 2008 WL 2788171, at *8 (E.D.N.Y. July 16, 2008).

## V.   CONCLUSION

Accordingly, based on the foregoing, the Court respectfully recommends that the District Court grant the Freeport and County Defendants' motions to dismiss the Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction and for failure to state a claim in their entirety and with prejudice.

## VI.   OBJECTIONS

A copy of this Report and Recommendation is being served on Defendants by electronic filing on the date below. Defendants are directed to serve a copy of this Report and Recommendation on Plaintiff and promptly file proof of service by ECF.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated: Central Islip, New York
  August 9, 2017     /s/ Steven I. Locke
              STEVEN I. LOCKE
              United States Magistrate Judge